FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 12, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARY T.,[1]

           Plaintiff,

    v.

MICHELLE KING, Acting
Commissioner of Social Security,[2]

          Defendant.

No. 2:24-cv-313-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Mary T. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits. Plaintiff claims she is unable to work due to headaches, depression, muscle spasms and cramps in her neck and legs, and burning in her hands, wrists, and feet. Because the ALJ's evaluation of the medical

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Michelle King recently became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d) and section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), she is hereby substituted as Defendant.

opinions pertaining to Plaintiff's cervical neck and upper extremities is not supported by substantial evidence, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

Claiming an inability to work due in part to cervical radiculopathy, hepatitis C, and bilateral hand numbness, Plaintiff applied for benefits under Titles 2 and 16, with an amended alleged onset date of May 4, 2022—her 50th birthday.[3]

After the agency denied benefits, ALJ Marie Palachuk held a telephone hearing in October 2023, at which Plaintiff and a vocational expert testified.[4] Plaintiff testified that she suffers from leg cramps, major headaches, neck pain, and burning pain in her hands, feet, and wrists.[5] She said it is difficult to drive due to her neck pain.[6] She stated that her pain is worse on the left than the right.[7] Plaintiff testified that if she tries "to do too much also I get headaches and I get like a surge of pain from my neck on the left side into my wrist and fingers."[8] She shared that her husband helps with dishes, laundry, and chores and that she

---

[3] AR 227–32, 38, 54, 72.

[4] AR 49–78, 113–30.

[5] AR 56–57.

[6] AR 56–57.

[7] AR 60.

[8] AR 59.

remains in bed some days.[9] She said that she is unable to lift over 5 pounds, explaining that it is even hard for her to lift a gallon of milk and so she does not do the weight lifting that she used to do.[10] She stated that her pain and limitations have caused her to be stressed and depressed, particularly as she is unable to work and does not have a social life.[11] She shared that due to her pain she is unable to play with her young grandchildren.[12]

The ALJ issued a decision denying benefits.[13] The ALJ found Plaintiff's alleged symptoms unsupported by the medical evidence and her activities.[14] As to the medical opinions, the ALJ found:

- The reviewing opinion of Robert Stuart, MD, and the examining opinions of Kenneth Brait, MD, and Steven Nadler, MD, persuasive.

---

[9] AR 57–61.

[10] AR 60.

[11] AR 57–58, 62.

[12] AR 60, 63.

[13] AR 26–38. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[14] AR 34–35.

- The treating opinion of Kelly Gillespie, MD; the examining opinion of Ryan Agostinelli, PA; and the reviewing opinions of Myrna Palasi, MD, and Barbara Cochran, MD, not persuasive.[15]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff has not engaged in substantial gainful activity since May 4, 2022, the amended alleged onset date, through her date last insured of December 31, 2025.

- Step two: Plaintiff had the following medically determinable severe impairments: mild degenerative disc disease of the cervical spine, history of old C7 radiculopathy, and hepatitis C.

- Step three: Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff has the RFC to perform less than the full range of medium work in that she can perform balancing, stooping, kneeling, crouching, crawling, and climbing on a frequent basis; she can reach overhead with the left upper extremity on a frequent basis; and she should avoid concentrated exposure to extreme cold, noise, and respiratory irritants.

---

[15] AR 35–37.

1

2

3

- Step four: Plaintiff was capable of performing past relevant work as a counter attendant, laundry worker, office helper, fish cleaner, and laborer stores.[16]

4

Plaintiff timely requested review of the ALJ's decision by the Appeals

5

Council.[17] The Appeal Council denied review and in doing so stated:

6

7

8

9

> You submitted medical reports of a Colonoscopy dated December 27, 2023 (2 pages); PET Tumor Imaging dated January 22, 2024 (2 pages); MRI Abdomen dated January 25, 2024 (2 pages); and Amith Ahluwalia, M.D. dated January 25, 2024 (2 pages). The Administrative Law Judge decided your case through November 30, 2023. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before November 30, 2023.[18]

10

11

Plaintiff timely requested that this Court review the denial of disability.

12

## II.     Standard of Review

13

The ALJ's decision is reversed "only if it is not supported by substantial

14

evidence or is based on legal error" and such error impacted the nondisability

15

determination.[19] Substantial evidence is "more than a mere scintilla but less than

16

17

[16] AR 19–38.

18

[17] AR 1–25.

19

[18] AR 2.

20

[19] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g);

21

*Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other*

22

*grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an

23

a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[20]

### III.    Analysis

Plaintiff argues the ALJ erred when relying on the opinion of Dr. Stuart, rather than the opinions of P.A. Agostinelli, Dr. Gillespie, or Dr. Palasi, in finding that the longitudinal medical record supports a modified medium-work RFC.[21] The Commissioner argues the ALJ's findings are supported by substantial evidence, particularly as the ALJ reasonably found Dr. Stuart's opinion more persuasive than P.A. Agostinelli's and Dr. Gillespie's opinions. The parties also disagree as to

---

ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[20] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[21] Plaintiff highlights that, if the opinions of P.A. Agostinelli, Dr. Gillespie, or Dr. Palasi are found persuasive, she would be considered disabled per Grid Rule 201.12 as of her 50th birthday, the amended alleged onset date.

whether the Appeals Council properly found the evidence submitted post-hearing did not relate back to the at-issue period and therefore did not affect the disability analysis. As is explained below, the ALJ erred when evaluating the medical opinions; on remand, the ALJ is to develop the record, including considering the previously disregarded medical records.

**A.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred by relying on the medical opinions of Dr. Stuart, Dr. Brait, and Dr. Nadler, rather than the more limiting medical opinions of P.A. Agostinelli, Dr. Palasi, and Dr. Gillespie.  The Commissioner argues the ALJ reasonably found Dr. Stuart's opinion more persuasive. After considering each of the medical opinions and the reasons for their issuance, the Court determines the ALJ's overall evaluation of the medical opinions is not supported by substantial evidence.

1.    <u>Standard</u>

The ALJ must consider and articulate how persuasive she found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with and supported by the record.[22] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and

---

[22] 20 C.F.R. §§ 404.1520c, 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

specialization.[23] Supportability and consistency are the most important factors.[24] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[25]

The regulations define these two required factors as follows:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[26]

2.    Dr. Brait and Dr. Nadler's Opinion

In March 2021, Dr. Brait and Dr. Nadler conducted an independent medical examination (IME) of Plaintiff as part of the Washington State Labor and Industries (L&I) case that was opened after Plaintiff's August 2020 workplace injury, a suspected sprained left thumb.[27] Their report summarized several treating records after the workplace injury through the date of their examination,

---

[23] 20 C.F.R. §§ 404.1520c, 416.920c(c)(1)–(5).

[24] *Id.* §§ 404.1520c, 416.920c(b)(2).

[25] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[26] 20 C.F.R. §§ 404.1520c, 416.920c(c)(1)–(2).

[27] AR 331–43.

including records reflecting that Plaintiff had muscle fatigue and tenderness in her wrists and hands and reduced grip strength.[28]

During the IME, Plaintiff reported that she was experiencing pain in both wrists and her upper left arm.[29] The report noted that Plaintiff's gait and her strength and reflexes in her lower extremities were normal. As to her hands:

> Examination of the hands shows no specific sensory loss. In the areas that she has the paresthesias she has good sensation. She has a negative Phalen sign at the wrist. She has a minimally positive Tinel sign at the wrist with radiation into the first two fingers. She has the minor sensory symptoms bilaterally. She has no atrophy. Eliminating the discomfort that she has, I did not see any specific weakness of either the arm or the hand. She has no autonomic changes.[30]

In addition, it noted that she had excellent range of motion in her shoulders and elbows, some tenderness in the area of the distal clavicle of her left shoulder, tenderness over the carpal tunnels but not at the base of either thumb, and positive Tinel signs at multiple levels.[31] Based on their record review and observations, they concluded that Plaintiff likely sprained her left thumb at work and:

> In our opinion the examinee needs no further treatment as a result of her work injury on August 6, 2020. She is fixed and stable, at maximum medical improvement. There is no impairment rating

---

[28] AR 501, 512, 518, 528, 533–34, 537–38, 548.

[29] AR 338, 343.

[30] AR 340.

[31] AR 341–42.

indicated. She can return to regular activities and work without restrictions *regarding her August 6, 2020 injury*."[32]

The ALJ found the opinion of Dr. Brait and Dr. Nadler persuasive because it was supported "by essentially normal examination findings" and was consistent with the overall record:

> which shows that her gait was normal, she was able to squat and rise from the seated position, straight leg raising was negative, and she had full range of motion in the cervical spine, left extremity joints, and left hand and fingers; and there was no evidence of hepatic dysfunction (Ex. 2F/41, 8F/18, 9F/2-6, and 17F/1-9).[33]

The ALJ's explanation fails to recognize that Dr. Brait and Dr. Nadler were only asked for an opinion as to Plaintiff's workplace injury—at that time understood to be a sprained thumb—and whether her thumb sprain was improved and/or prevented her from returning to work without restrictions.[34] In addition, the ALJ fails to explain why Plaintiff's observed normal gait, ability to squat, and negative straight leg raising had any bearing on her cervical radiculopathy and symptoms related to her upper

---

[32] AR 34 (emphasis added).

[33] AR 36.

[34] *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (requiring medical records to be interpreted in their context and purpose).

extremities.[35] The ALJ failed to consider Dr. Brait's and Dr. Nadler's more relevant observations, namely Plaintiff's burning, weakness, and pain in her hands. For instance, Dr. Brait observed discomfort when examining Plaintiff's hand/wrist, minimally positive Tinel sign at the wrist with radiation into the first two fingers, and minor sensory symptoms bilaterally.[36] Dr. Nadler noted that, although Plaintiff had good range of motion in her left shoulder, she reported pain and was observed with tenderness in the area of the distal clavicle and she was very tender over the carpal tunnels.[37]

The ALJ's errors when evaluating Dr. Brait and Dr. Nadler's limited-purpose IME in turn impacted the ALJ's "consistency" analysis as to the medical evidence and opinions overall. For instance, contrary to the ALJ's

---

[35] *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (emphasizing that treatment records must be viewed considering the overall diagnostic record); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (disallowing the ALJ from cherry picking evidence to support a conclusion that contradicts the overall diagnostic record); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' [opinions] are correct.").

[36] AR 339.

[37] AR 340–41.

1  finding otherwise, as is discussed more below in connection with PA-C

2  Richard Edison's treatment, that Plaintiff reported continued hand and

3  wrist problems even though her workplace thumb injury was considered to

4  be at maximum medical improvement does not itself correlate to an

5  inconsistency between Dr. Brait and Dr. Nadler's opinion and the opinions of

6  Dr. Palasi, P.A. Agostinelli, and Dr. Gillespie.[38]

7        3.    Dr. Palasi's Opinion

8        In November 2021, Dr. Palasi reviewed a June 2, 2021 treatment record

9  authored by treating provider Dr. Gillespie, along with contemporaneous cervical

10  spine and brain MRIs, a May 2021 physical examination, and a December 2020

11  MRI.[39] Dr. Gillespie's June 2, 2021 treatment note mentions that she reviewed a

12  medical record from a rheumatologist, who suspected that Plaintiff may have

13  fibromyalgia, that Plaintiff was being treated by orthopedists and neurologists for

14  multiple arthralgias and nerve pains, and that Plaintiff was being seen by

15  infectious disease specialists for hepatitis C.[40] The reviewed brain MRI showed

16  "demyelination, chronic small vessel changes and chronic migraine," and the June

17  MRI of the cervical spine showed "[d]isc osteophyte complex with mild disc bulge

18  flattening the ventral thecal sac. Mild left facet and uncovertebral joint

19

20  [38] AR 370–72.

21  [39] AR 355–56.

22  [40] AR 363.

23

arthropathy result in mild left neural foraminal stenosis."[41] The reviewed medical record from May 2021 was authored by PA-C Edison, who was treating Plaintiff for her left thumb sprain and bilateral wrist tendonitis, along with continued pain in the upper back and neck region and numbness and tingling in the fingers of both hands. PA-C Edison noted, "Patient had an IME done and the only allowed condition was sprain of the left thumb. The IME examiner [—Dr. Brait and Dr. Nadler—] determined patient was at maximum medical improvement, without permanent partial impairment, in regards to the thumb injury and that no further treatment was indicated and that patient could return to work without restrictions."[42] PA-C Edison observed Plaintiff with tenderness in the posterior neck and upper back region, especially on the left; tenderness of the anterior and lateral aspects of both shoulders, the lateral epicondyle region of both elbows, and dorsal and volar aspects of both wrists; decreased bilateral wrist flexion; tenderness of the left thumb at the MCP joint and middle phalanx, although range of motion and strength were normal; and 3/5 grip strength on the left with 4/5 grip strength on the right.[43] PA-C Edison wrote that he concurred with the IME report that Plaintiff reached maximum medical improvement as to the sprain of the MCP joint of the left thumb but "patient does have ongoing pain and weakness of both

---

[41] AR 361, 365.

[42] AR 370.

[43] AR 371.

1    wrists and hands and also pain of the upper back and neck which have not been

2    accepted as part of this claim by L&I. These symptoms may be due to fibromyalgia

3    or possibly to side effects from hepatitis C or another condition yet to be

4    diagnosed."[44]

5         Based on her review of these treatment records and MRIs, Dr. Palasi agreed

6    with the listed diagnosis of cervical radiculopathy, positive ANA (antinuclear

7    antibody), hepatitis C, and arthralgia of multiple sites, bilateral.[45] Dr. Palasi

8    opined, "The severity of this [claimant's] combined impairments renders her unable

9    to safely sustain a 40-hr workweek. Recommend a less than sedentary RFC and a

10   severity rating of 5 for cervical radiculopathy, chronic Hep C infection, and

11   bilateral wrist tendinitis."[46]

12        The ALJ found Dr. Palasi's opinion was not persuasive given that it was not

13   supported or explained by examination, and it was not consistent with the overall

14   medical record—using the same language and cited-to evidence as the ALJ did to

15   find Dr. Brait and Dr. Nadler's IME opinion persuasive:

16       her gait was normal, she was able to squat and rise from the seated
         position, straight leg raising was negative, and she had full range of
17       motion in the cervical spine, left extremity joints, and left hand and

18

19

20   [44] AR 371.

21   [45] AR 355, 359.

22   [46] AR 355.

23

fingers; and there was no evidence of hepatic dysfunction (Ex. 2F/41, 8F/18, 9F/2-6, and 17F/1-9).[47]

Again, the ALJ failed to explain why Plaintiff's normal gait, ability to squat and rise from the seated position, and negative straight leg raise were reasons to discount Dr. Palasi's opinion, which focused on Plaintiff's cervical radiculopathy, chronic hepatitis C infection, and bilateral wrist tendinitis.[48] The ALJ erred in this regard.

### 4.    Dr. Cochran's Opinion

On May 18, 2022, as part of the disability determination process at the initial level, Dr. Cochran reviewed the medical records available to her, as listed on the Disability Determination Explanation, which did not include Dr. Palasi's opinion.[49] Dr. Cochran found that Plaintiff had a disorder of the skeletal spine, had

---

[47] AR 36.

[48] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[49] AR 80–85, 87–92.

a disorder of muscle/ligament/fascia, and suffered from arthropathies and

migraines—however, she found that none of the impairments were severe:

> claimant had a WC injury to right wrist She has been seen for c/o pain
> and dysfunction with nothing found on objective testing to make dx of
> anything other than tendinitis she c/o neck pain with numbness in left
> hand with exam not showing dermatome distribution for sensory loss
> EMG/NCV are negative for any entrapment neuropathy and
> suggestion of old C7 radiculopathy but findings subtle. She has wright
> wrist MRI that is normal. multiple exams have failed to show any
> myelopathy, radiculopathy or any other MDI For neck. Pain is a
> symptom not an MDI. she has some minimal OA in one thumb she
> has not been dx with FMS and no MER that meets either SSA Or
> ACR criteria for FMS. All c/o are subjective and sensory loss purely
> volitional and nothing to support from exams or testing that any
> dysfunction exists. she has HCV under tx w/o signs or symptoms of
> hepatic dysfunction. no MDI 3373 indicates independent adls, cooks,
> drives multiple physical limits. No MDI that limits hands, sit, lift or
> any other physical function statements partially consistent.[50]

The ALJ found that although Dr. Cochran's opinion was "supported by a

review and summary of the medical evidence available at the time of her findings,

it was not persuasive." The ALJ then found, "[f]urthermore, [Dr. Cochran's opinion]

is consistent with more recent records which do support some limitations."

The ALJ fails to meaningfully explain how Dr. Cochran's opinion that

Plaintiff has no severe physical impairment is consistent with records that the ALJ

otherwise found supported a finding of three severe impairments: mild

degenerative disc disease of the cervical spine, history of old C7 radiculopathy, and

hepatitis C. Moreover, it is not legitimate for the ALJ to find Dr. Cochran's

---

[50] AR 83 (as original).

reviewing opinion supported by simply a review of the medical evidence and then contrastingly find Dr. Palasi's reviewing opinion "not supported or explained by examination."[51]

5.    P.A. Agostinelli's Opinion

In October 2022, P.A. Agostinelli completed an internal medicine examination and reviewed orthopedic/spine visit records from the University of Washington dated July 27, 2021 and February 8, 2022; a physiatry note from the University of Washington dated October 15, 2021; and neurology consult records dated October 15, 2021.[52] The July 27, 2021 treatment record was authored by Dr. James Robinson and was a follow-up from his treatment earlier that month.[53] Dr. Robinson had ordered a repeat cervical MRI scan, which was performed on July 26, 2021. He reviewed the MRI, along with the earlier December 2020 cervical MRI, with one of the neuroradiologists, who opined that both scans demonstrated mild to moderate compromise of the left C5-6 foramen. Dr. Robinson suspected that Plaintiff's musculoskeletal pains began with an irritation of the left C6 nerve root. P.A. Agostinelli also reviewed a February 8, 2022 medical record authored by Dr. Robinson, following Plaintiff's left C6 selective nerve root block.[54] Plaintiff had

---

[51] AR 36.

[52] AR 853–57.

[53] AR 630.

[54] AR 854, 638–39.

1    reported that her pain improved with the nerve block, although she still had

2    pain.[55]

3        One of the reviewed October 15, 2021 records was prepared by He Li, MD.[56]

4    Dr. Li observed Plaintiff with a normal gait and ability to perform a full squat, full

5    range of motion of the lumbar and cervical spine, negative straight leg raise, full

6    strength in upper and lower extremities, but with tenderness to palpation on the

7    neck and bilateral shoulders with left tenderness greater than right tenderness,

8    decreased sensation to pinprick left hand and wrist in no particular dermatome

9    pattern, allodynia in neck and shoulders, and Facet loading and Spurlings' tests

10   could not be clearly interpreted because any movement caused pain in the neck.

11   Dr. Li wrote:

12           Given her presentation today, our impression is that the cause of her
13           overall symptom is likely multifactorial, including neuropathic pain,
             myofascial pain and a significant component of central sensitization.
14           Her initial presentation a year ago seems suggestive of a C6 nerve
             root problem (left thumb pain), however it has likely evolved over time
             and can no longer be solely explained by C6 nerve root pathology.[57]

15   The other October 15, 2021 record was prepared by Dr. Katherin Peperzak, who

16   was present for Dr. Li's examination and agreed with Dr. Li's findings and plan of

17

18

19   _____

20   [55] AR 638–39.

21   [56] AR 631–35.

22   [57] AR 634.

23

care.[58] She wrote that she explained to Plaintiff that "although her symptoms may have initially begun as a more focal concern related to her neck, her symptoms now are more diffuse (non-dermatomal) and consistent with central sensitization," and therefore treatment with medication to reduce pain symptoms was recommended.[59]

In addition to reviewing these medical records, P.A. Agostinelli observed Plaintiff with a normal gait and tandem walk, an ability to do a full squat and raise from a chair without difficulty, although she needed some help getting off the examination table.[60] He noted that her musculoskeletal findings were normal, and she had full strength in her upper and lower extremities, including grip strength, but reported significant pain in her left arm, hand, and left shoulder. P.A. Agostinelli diagnosed Plaintiff with left cervical radiculopathy and opined that her prognosis was poor. He also opined that Plaintiff could stand, walk, and sit for 8 hours, her maximum lifting/carrying capacity was 25 pounds occasionally and 10 pounds frequently with her right upper extremity but only half those amounts with her left upper extremity. He opined that Plaintiff's ability to perform repetitive manipulative activities was significantly limited with her left shoulder, arm, and hand and that she should avoid harsh/extreme working environments.

---

[58] AR 847–48.

[59] AR 848.

[60] AR 853–57.

The ALJ found P.A. Agostinelli's opinion not persuasive as it was "not supported by any significant positive examination findings" and was "not consistent with the overall record, which shows normal gait and station, and no positive findings noted in any area."[61]

The ALJ's analysis lacks meaningful explanation and substantial-evidence support. Again, the ALJ fails to explain why she focused on Plaintiff's normal gait and station when the MRIs showed mild to moderate compromise of the left C5-6 foramen and given that both Dr. Li and Dr. Peperzak suspected that Plaintiff's symptoms were likely triggered by a C6 nerve root problem. Dr. Li, Dr. Peperzak, and P.A. Agostinelli observed Plaintiff with tenderness in her bilateral shoulders, decreased sensation in her left hand and wrist, and pain in her left arm, hand, and shoulder. Without meaningfully discussing the observations and MRI findings more relevant to Plaintiff's cervical radiculopathy, the ALJ's analysis is not supported by substantial evidence.

6.    Dr. Stuart's Opinion

In November 2022, as part of the disability determination at the reconsideration level, Dr. Stuart reviewed the therein listed medical records.[62] He opined that "all of the complaints are subjective and the sensory loss purely volitional and nothing to support from exams or testing that any dysfunction

---

[61] AR 36.

[62] AR 94–101, 103–10.

exists. . . ."[63] Nonetheless, he found a severe disorder of the skeletal spine. He opined that Plaintiff could sit, stand, and walk about 6 hours in an 8-hour workday, should be limited to frequent crawling and climbing ladders/ropes/scaffolds, limited to frequent overhead reaching with the left upper extremity, and should avoid extreme cold, noise, and fumes.

The ALJ found Dr. Stuart's opinion persuasive as it was "supported by a review and summary of the available medical records available at the time of his findings" and "consistent with the overall record," with the ALJ again using the same language to summarize what she deemed the relevant medical findings.[64]

Once more, the ALJ failed to meaningfully explain why Plaintiff's normal gait, ability to squat and rise from a seated position, and negative straight leg raise were relevant to the supportability analysis. Moreover, the most recent medical records before Dr. Stuart's review were chiropractor treatment and imaging records from Chad Hurst, D.C.[65] D.C. Hurst observed Plaintiff with reduced range of motion during the cervical examination and pain and tenderness in the left cervical region, left cervicothoracic junction, left posterior shoulder, lumbar, left sacroiliac, and right sacroiliac, along with muscular hypertonicity at left scalenes, left trapezius, right scalenes, bilateral lumbar paraspinals, left posterior shoulder,

---

[63] AR 106.

[64] AR 36.

[65] *See, e.g.*, AR 668–761.

1   and lumbosacral junction.[66] His observations were consistent with, and imaging

2   confirmed, that Plaintiff had an abnormal anterior head translation, with head tilt

3   to the left and cervical list to the left and lower left shoulder.[67]

4        While the ALJ need not discuss every piece of evidence,[68] the ALJ's analysis

5   failed to meaningfully explain why the evidence cited by the ALJ was more

6   relevant to the supportability and consistency analysis than the medical records

7   more pertinent to Plaintiff's neck and upper extremities, such as the chiropractor

8   treatment records and imaging.

9        7.    Dr. Gillespie's Opinion

10       Dr. Gillespie began treating Plaintiff in January 2021, seeing her five times

11  before completing disability paperwork in June 2023.[69] One of those visits—from

12  June 2021—was discussed above. On the Physical Functional Evaluation opinion

13  form, Dr. Gillespie noted Plaintiff's chief complaints as neck pain and hand

---

[66] AR 669.

[67] AR 669.

[68] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022) (While an ALJ need not address every piece of evidence, an ALJ "may not ignore significant probative evidence that bears on the disability analysis."); *Black*, 143 F.3d at 386 ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[69] AR 492–93, 432–37, 363–67, 652–53, 1100–07.

numbness, he attached the July 26, 2021 cervical spine MRI results, diagnosed Plaintiff with cervical radiculopathy with a severity rating of 5 (severe), and opined that she was unable to meet the demands of sedentary work, which was defined as the ability to lift 10 pounds maximum and frequently lift or carry lightweight articles and walk or stand only for brief periods.[70]

The ALJ found Dr. Gillespie's opinion not persuasive because it was "not supported by any significant positive examination findings" and "not consistent with the overall record," again relying on the same language to summarize what the ALJ deemed to be the relevant medical findings.[71]

Once again, the ALJ's analysis lacked meaningful analysis and relevant evidentiary support. The ALJ failed to explain why the finding of "trace anterolisthesis of C4 over C5 and mild cervical spondylosis, most pronounced at C5-C6 where there is mild to moderate left neural foraminal stenosis" is less relevant to Plaintiff's impairments and reported symptoms than her normal gait, ability to squat and rise from the seated position, and negative straight leg.[72] Moreover, the ALJ's finding that Plaintiff has full range of motion in her cervical

---

[70] AR 1107–10.

[71] AR 36.

[72] AR 841.

spine is inconsistent with D.C. Hurst's cervical range-of-motion findings and his imaging.[73]

### 8.    Consequential Error

The ALJ's errors when evaluating the medical opinions resulted in an RFC that allows for Plaintiff to perform medium work—work that requires the ability to lift up to 50 pounds and frequently lift or carry up to 25 pounds, albeit with the limitation that overhead reaching with the left upper extremity be only frequent.[74] Because the contested medical opinions question whether Plaintiff's cervical radiculopathy and other impairments preclude her from such work, the ALJ's errors were consequential.

## B.    Remand for Further Proceedings

Plaintiff seeks a remand for payment of benefits per the Grids based on her age (50+) and the opinions of Dr. Palasi, P.A. Agostinelli, and Dr. Gillespie. Because of the conflicts in the medical opinions, the Court finds that remand for further proceedings is appropriate at this time. The ALJ is given another opportunity to evaluate the medical opinions, while appreciating the limited purpose of the IME done by Dr. Brait and Dr. Nadler and considering the medical observations and findings relevant to Plaintiff's impairments.[75] On remand, if the

---

[73] AR 669–70, 685.

[74] *See* 20 C.F.R. §§ 404.1567, 416.967.

[75] *See, e.g.*, *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

ALJ again discounts Plaintiff's symptoms, the ALJ must articulate clear and convincing reasons for discounting the identified symptoms and cite the evidence that undermines the symptoms.[76] The ALJ must ensure that the examples she relies on fairly represent the whole medical record.[77] Moreover, the ALJ is to consider the sequence of Plaintiff's impairments and that Plaintiff continued seeking medical treatment to identify a cause for her neck and upper extremity symptoms.[78] Finally, the ALJ is to develop the medical record, including considering the medical records Plaintiff provided to the Appeals Council.[79]

---

[76] *Ghanim*, 763 F.3d at 1163.

[77] *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) ("While ALJs obviously must rely on examples . . . the data points they choose must in fact constitute examples of a broader development . . . .").

[78] *See Smith v. Kijakazi*, 14 F.4th 1108, 1113–16 (9th Cir. 2021).

[79] Because the post-hearing evidence will be considered as part of the developed record on remand, the Court need not address the parties' arguments related to whether the Appeals Council appropriately found the post-hearing evidence not relevant to the ALJ's decision. However, the Court highlights that, given Plaintiff's family history, treating provider Dr. Gillespie referred Plaintiff in June 2023 to have a special colon screening to look for malignant neoplasms. AR 1100. Then, in October 2023, Plaintiff was found to have a ruptured appendix and was again

### IV.    Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 9**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 12th day of February 2025.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge

---

referred for a colonoscopy. AR 20. The results of the colonoscopy in December 2023 revealed colon cancer. AR 15–25.